**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | | |
|---|---|---|
| **SNIDER TIRE, INC.** | ) | |
| **D/B/A SNIDER FLEET SOLUTIONS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **CASE NO.:** |
| | ) | |
| **JONATHAN NELSON,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY
INJUNCTION, PERMANENT INJUNCTION, DAMAGES AND OTHER RELIEF**

Plaintiff Snider Tire, Inc. d/b/a Snider Fleet Solution (referred to as "Company" or "Plaintiff"), through undersigned counsel, bring this Complaint for Preliminary Injunction, Temporary Restraining Order, Permanent Injunction, Damages and Other Relief against Defendant Jonathan Nelson ("Nelson" or "Defendant"), hereby alleging and stating as follows:

Defendant Jonathan Nelson, a person of the agree and majority, who, upon information and belief, is domiciled in the County of Spartanburg, State of South Carolina.

**NATURE OF ACTION**

1.  Snider brings this action to enforce its legal rights to enjoin its former Business Development Manager, from further misappropriating, improperly using and/or disclosing, Snider's confidential information and trade secrets. Snider also seeks damages associated with Defendant's violations of law and contract and the unjust enrichment bestowed upon Defendant because of his wrongful actions as described herein.

2. Shortly after Defendant's separation from Snider, the Company was advised by customers that Nelson would be joining Snider's direct competitor, Jim Whitehead Tire Service once his paid noncompete period expired.

3. This and suspicious competitive activity within the territory previously managed by Defendant caused Snider to review Defendant's computer history which revealed that Defendant had misappropriated numerous files containing Snider's confidential and trade secret information.

4. Specifically, Snider learned that just two days after Defendant ceased working for the Company, because of his voluntary resignation, Defendant accessed Snider's computer network at 2:05 a.m. and downloaded numerous files containing Snider's confidential and trade secret information.

5. Snider is asserting causes of action against Defendant Nelson for breach of contract, violation of the federal Defend Trade Secrets Act, and violation of the federal Computer Fraud and Abuse Act.

**PARTIES, JURISDICTION, AND VENUE**

6. Snider Tire, Inc. is a North Carolina corporation with its principal place of business in Greensboro, North Carolina.

7. Defendant Jonathan Nelson is a resident and citizen of Spartanburg County, South Carolina.

8. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1367(a). This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00 excluding interests and costs.

-3-

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in the District.

## FACTUAL ALLEGATIONS

10. Snider is engaged in the business of selling and servicing of truck tires for commercial vehicles, the manufacture of retreaded commercial truck tires, industrial forklift tires, as well as the sale of servicing related products for use in the commercial truck industry. Plaintiff also sells and services light, medium and heavy trucks and trailers, forklifts, and other types of equipment for fleets and other companies. Snider does business throughout the Southeast including in the State of South Carolina.

11. Snider has developed and maintains confidential and trade secret information concerning its business including, without limitation information related to its products, services, and customers which provides the Company with a competitive advantage.

12. Snider seeks to protect the confidentiality of its confidential and trade secret information by entering into employment agreements containing confidentiality and return of property covenants with certain key employees, by requiring computer passwords to access confidential information, by maintaining policies on confidentiality, and by limiting access to confidential information to employees that need the information to carry out their job duties.

13. Defendant Nelson was employed by Snider from March of 2010 until he voluntarily resigned and separated from Snider on January 27, 2023.

14. Defendant Nelson held the position of Business Development Manager for the State of South Carolina for Snider at the time he voluntarily resigned.

15.     As a Business Development Manager, Defendant's duties included supporting the roll-out, execution, and training of company-wide projects; supporting both internal and external customers' needs and customer information management; and managing incoming vendor and client agreements from the field.

16.     In order to perform his duties Defendant was privy to and given access to certain Snider confidential and trade secret information. Specifically, Defendant was granted access to extensive customer information, pricing information, business prospects, profit margins, and product information.

17.     As a condition of receiving an increase in compensation Defendant Nelson executed an Employment Agreement (the "Agreement") with Snider on or about December 28, 2020, attached hereto as **Exhibit A**.

18.     Paragraph 5 of Defendant's Agreement entitled "Covenant Not to Disclose Confidential Information" provides in relevant part:

> (b) respect to any Confidential Information which is obtained by Employee during or as the result of Employee's performance of services for the Company and/or its clients, vendors, suppliers and distributors and which is not generally available to the public, whatever its nature and form and whether obtained orally, by observation, from written materials or otherwise, Employee agrees as follows:
>
> (i) Employee will hold all such Confidential Information in strict confidence and will not use, publish, divulge or otherwise reveal or allow to be revealed any portion thereof to any third person, company or other entity, except to or with the prior written consent of the Company; and
>
> (ii) Employee will use all reasonable precautions to assure that all such Confidential Information is properly protected and kept from unauthorized persons or entities, and will immediately report to the Company any misuse

>> of such Confidential Information that Employee may encounter by another person or entity.

19. Paragraph 7 of Defendant's Agreement entitled "Surrender of Books and Records" provides as follows:

>> Employee acknowledges that all files, electronic information, records, lists, designs, specifications, books, products, plans and other materials or property owned or used by the Company in connection with the conduct of its business shall at all times remain the property of the Company, and that upon termination or expiration of this Agreement for any reason or upon the request of the Company, Employee will immediately surrender to the Company all such materials.

20. Paragraph 6 of Defendant's Agreement entitled "Covenant Not to Compete/Solicit/Interfere" provides in relevant part as follows:

>> (a) Engage in, manage, operate, control, or participate in the management, operation, or control of, be employed by, associated with, lend his/her or its name or any similar name to, or render services or advice, in a role that is the same or similar to that Employee performed for the Company under this Agreement to any business or individual for the purpose of marketing, selling or servicing products or activities which compete with the products or activities of the Business (as defined above), anywhere within the Territory (as defined below) without the written consent of the Company;

>> * * *

>> (c) Solicit the business of any Person known to Employee to be a customer/client of the Company, if Employee had personal and material contact with such Person, or had access to Confidential Information regarding such Person, with respect to products or activities which compete with the products or activities of the Company.

21. On January 27, 2023, Defendant gave notice of his intent to voluntary resign from his employment with Snider.

22. Defendant's last day of employment with Snider was January 27, 2023.

23. Shortly after Defendant's separation Snider invoked its right to enforce the noncompete provision in paragraph 6 (Covenant Not to Compete/Solicit/Interference), and as provided for under that paragraph began compensating Defendant his annual base salary during the period of restriction.

24. After Defendant's separation from employment, Snider heard from customers that Defendant would be joining Snider's direct competitor, Jim Whitehead Tire, after Defendant's paid noncompete period expired.

25. Activity within the territory previously managed by Defendant for Snider caused Snider to believe Defendant may be competing in violation of the terms of his employment agreement with Snider.

26. Snider reviewed Defendant's computer history and learned that two days after his last day of employment with Snider Defendant had downloaded numerous Snider files containing Snider confidential and trade secret information.

27. On January 29, 2023 at 2:03 a.m., two days after Defendant's last day of employment with Snider, Defendant accessed Snider's computer network through an Office365 account and downloaded 16 files containing Snider business information, including confidential and trade secret information. *See* **Exhibit B,** Declaration of Laurance Lieb, ¶ 17.

28. Among the information misappropriated was confidential customer information, proposals, pricing, and a prospect list. Specifically, Defendant accessed and downloaded the following:

| FILE NAME |
|---|
| Prospect List.xlsx |
| Yokohama (PRICING) 07-01-22.xlsx |
| Snider Fleet Solutions Proposal - Randolph Trucking 1.9.23 (REVISED).pptx |
| Copy of 243 IND SCHEDULE - 08.12.22 (003).xlsx |

| |
|---|
| Document (4).docx |
| MRT MM Oliver Vipal Retread (Pricing 08-01-2022).xlsx |
| Yokohama (PRICING) 07-01-22.xlsx |
| Snider Fleet Solutions Proposal - Randolph Trucking 1.5.23.pptx |
| LiftoneProgram2020.xlsx |
| Copy of 243 IND SCHEDULE - 08.12.22 (003).xlsx |
| LiftoneProgram2020.xlsx |
| MRT MM Oliver Vipal Retread (Pricing 08-01-2022).xlsx |
| Yokohama (PRICING) 07-01-22.xlsx |
| Snider Fleet Solutions Proposal - Randolph Trucking 1.9.23 (REVISED).pptx |
| SourceFileName":"LiftoneProgram2020.xlsx |
| Snider Fleet Solutions Proposal - Randolph Trucking 1.5.23.pptx |

*See* **Exhibit B**, Declaration of Laurance Lieb, ¶ 17.

29.     The information contained in the files accessed and downloaded by Snider include confidential customer prospect lists, confidential pricing information, which includes profit margin information, and confidential customer information.

30.     Forensic analysis of Nelson's company-assigned laptop revealed that Nelson first connected an ASolid generic USB drive, serial number 36454814&0 ("ASolid USB drive"), to the laptop on December 14, 2022 and then last connected the ASolid USB drive to the laptop on January 25, 2023 at 8:15 p.m. *See* **Exhibit B**, Dec. of Lieb, ¶ 23. Forensic analysis revealed Nelson backed up his Snider email account to the ASolid USB drive on December 15, 2022 at 2:27 a.m. *See id.* at ¶ 24.

31.     Forensic analysis revealed Nelson accessed the ASolid USB drive on January 25, 2023 at 8:20 p.m. and accessed the following files and folders:

| |
|---|
| D:\Quotes |
| D:\Columbia Product Ranking Report |
| D:\Greenville Product Ranking 2022 |
| D:\Columbia Customer Ranking January 2023.TXT |
| D:\Customer Ranking Report\SRS Distribution Product Ranking 2022.TXT |

| |
|---|
| D:\Customer Ranking Report\Gossett Concrete Product Ranking 2022.TXT |
| D:\Customer Ranking Report\US Lumber Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Piedmont Concrete Product Ranking 2022.TXT |
| D:\Customer Ranking Report |
| D:\Customer Ranking Report\Spartanburg Customer Ranking 2022.TXT |
| D:\Copy of Copy of Quote - Liftone.xls |
| D:\Customer Ranking -Blanchard Equipment.xlsx |
| D:\Charleston Customer Ranking.xlsx |
| D:\Copy of JON NELSON Target List.xlsx |
| D:\Columbia Industrial Customer Ranking.TXT |
| D:\MRT MM Oliver Vipal Retread (Pricing 08-01-2022) (1).xlsx |
| D:\Yokohama (PRICING) 07-01-22 (1).xlsx |
| D:\Hankook (Pricing) 05-01-2022 (1).xlsx |
| D:\Continental (PRICING).xlsx |
| D:\Conti General (PRICING) 5.1.22.xlsx |
| D:\BF Goodrich (Pricing) 06-01-2022.xlsx |
| D:\Donaldson Filters (PRICING) 4-1-20.xlsx |
| D:\backup.pst |
| D:\LiftOne Tire Program FINAL Feb 1  2022.xlsx |
| D:\LiftoneProgram2020.xlsx |
| D:\Uniroyal MT (PRICING) 4-1-20.xlsx |
| D:\Sumitomo (PRICING) 07-01-2022 (1).xlsx |
| D:\SaddleCreek.png |
| D:\Sailun (PRICING) 06-15-2022.xlsx |
| D:\Michelin (Pricing) 06-01-2022.xlsx |
| D:\Sample Reports 2021.pdf |
| D:\Diamond Pet Foods Product Ranking.TXT |
| D:\Brand Strategy – Industrial.pdf |
| D:\OTR Engineering - Foam Fill Chart.pdf |
| D:\Continental and General OTR-Industrial (Pricing) 5.1.2022 (2).xlsm |
| D:\Oil & Lubricants - Chevron Product Guide & Pricing (4-1-20).pdf |
| D:\OTR Engineering - Foam Fill Chart |
| D:\Customer Ranking Report\Greenville Customer Ranking Report 2022.TXT |
| D:\Customer Ranking Report\Blanchard Columbia Product Ranking Report 2022.TXT |
| D:\Customer Ranking Report\Carolina Handling Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Ackerson Stevens Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Millwood INC Product Ranking Report 2022.TXT |
| D:\Customer Ranking Report\Sunbelt Rentals Spartanburg Product Ranking 2022.TXT |
| D:\Customer Ranking Report\L&W Supply Product Ranking Report 2022.TXT |

| |
|---|
| D:\Customer Ranking Report\84 Lumber Product Ranking 2022.TXT |
| D:\Customer Ranking Report\BHI Product Ranking Report 2022.TXT |
| D:\Customer Ranking Report\Pinnacle Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Hamricks Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Budweiser Product Ranking Report 2022.TXT |
| D:\Customer Ranking Report\Martex Fiber Product Ranking 2022.TXT |
| D:\Customer Ranking Report\H&E (Spartanburg) Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Kirk Product Ranking 2022.TXT |
| D:\Customer Ranking Report\DH Griffin Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Yoders Product Ranking Report 2022.TXT |
| D:\Customer Ranking Report\VLS Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Carter Lumber Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Marte |
| D:\Customer Ranking Report\Tindall Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Bagwell Fence Product Ranking Report 2022.TXT |
| D:\Customer Ranking Report\Contract Lumber Product Ranking 2022.TXT |
| D:\Southeast Industrial Columbia - Product Ranking Report.TXT |
| D:\Southeast Industrial.TXT |
| D:\Customer Ranking Report\Concept Packing Product Ranking 2022.TXT |
| D:\Customer Ranking Report\Sungro Product Ranking 2022.TXT |
| D:\Customer Ranking Report\ABC Supply (Spartanburg) Product Ranking 2022.TXT |
| D:\Sunland Distribution Product Ranking.TXT |
| D:\G&W Product Ranking Report.TXT |
| D:\SRS Distribution Product Ranking.TXT |
| D:\Southeast Industrial Florence - Product Ranking Report.TXT |
| D:\2022 Spartanburg Industrial Service.TXT |
| D:\INProduction Product Ranking.TXT |
| D:\LIFTONE PRODUCT RANKING.TXT |
| D:\Carpenter Design - Product Ranking.TXT |
| D:\Southern States Packaging Product Ranking.TXT |
| D:\Carolina Handling Product Ranking Report.TXT |
| D:\Sunbelt Rentals Greer - Product Ranking.TXT |
| D:\Dave Steel Product Ranking.TXT |
| D:\United Rentlas Columbia - Product Ranking Report.TXT |
| D:\Sunbelt Rentals G7 |
| D:\Diamond Pet Foods Product Ranking |
| D:\US LUMBER Product Ranking.TXT |
| D:\Customer Ranking Report\Columbia Customer Ranking Report 2022.TXT |

*See* **Exhibit B**, Dec. of Lieb, ¶ 25, Table C.

32.     The files contained on the ASolid USB device include confidential customer information, confidential product information, and confidential pricing information. The files contained on the ASolid USB device were largely not relevant to Defendant's job duties at Snider but would allow him to directly compete with Plaintiff.

33.     Forensic analysis of Nelson's company-assigned laptop revealed that Nelson did an online search for "resignation letter example" on December 30, 2022 at 9:41 a.m. *See id*. ¶ 13.

34.     On May 5, 2023, Snider, through outside counsel, sent a letter to Defendant, via FedEx, requesting that he immediately contact Snider's counsel to, among other things, make arrangements to return to Snider its confidential information and to advise about his use and disclosure of Snider's property and information.

35.     Defendant was also advised of his duty to preserve all documents and information pertaining to his misappropriation of Snider information, and related to his breach of his confidentiality, noncompete, and nonsolicitation of customers covenants in his Agreement with Snider.

36.     On May 15, 2023, Defendant's counsel advised that Defendant possessed Snider information on a USB drive and would return it.

37.     Defendant's counsel was unable to explain how the data got transferred to the USB drive, whether it was taken after he separated from Snider, or if it had been accessed or disclosed since its misappropriation. It was agreed that Defendant's counsel would speak to Defendant about those issues and get back to Snider's counsel the next morning, May 16, 2023.

38. At 4:10 p.m. on May 16, 2023, Defendant's counsel advised: "Yes, I have spoken to him. He is looking back at everything so I can provide you a more specific answer as to possible times, info, etc." (See Ex. C).

39. On May 17, 2023, Defendant's counsel advised that he had referred Defendant to other unnamed counsel.

40. On May 18, 2023, Defendant's former counsel indicated that Defendant had a meeting with the unnamed counsel at 10:00 a.m. that day, May 18, 2023.

41. Plaintiff has not heard anything from Defendant or any attorney or representative on his behalf since May 18, 2023.

42. Upon information and belief, Defendant is utilizing the misappropriated documents and information to directly or indirectly compete with Plaintiff.

## COUNT I
### Breach of Contract – Employment Agreement

43. Snider realleges and incorporates by reference the preceding paragraphs as if stated fully herein.

44. The Employment Agreement entered into by the parties is a valid and enforceable contract executed by Defendant on or about January 28, 2021.

45. Defendant's compliance with the Employment Agreement and the covenants therein were conditions precedent to his employment or continued employment and other valuable consideration.

46. Defendant breached and is continuing to breach his contractual promise to hold the Company's confidential information in strict confidence and his contractual promise to not use, publish, divulge or otherwise reveal or allow to be revealed any portion of the Company's confidential information to any third person.

47. Defendant's continued possession of Snider's confidential information is a breach of his covenant to surrender all company property and information to the Company upon his separation from Snider.

48. Defendant upon information and belief has breached and is continuing to breach his contractual promise to not engage in, manage, operate, control, or participate in the management, operation, or control of, be employed by, associated with, render services or advice, in a role that is similar to that which he performed for the Company to any business or individual for the purpose of marketing, selling or servicing products or activities which compete with the products or activities of the Company.

49. Defendant impermissibly possesses and continues to possess the Company's Trade Secrets and Confidential Information in furtherance of Defendant's efforts to unfairly compete. In doing so, Defendant has violated his obligation to hold this information confidentially, to refrain from using this information except as necessary to perform his duties for the Company or as otherwise authorized by the Company.

50. As a result of Defendant's breach of his contractual obligations, the Company has been damaged, and will continue to be damaged, in an amount to be proven at trial.

### COUNT II
### Violation of Defend Trade Secrets Act
### (18 U.S.C. § 1831 (*et seq.*))

51. Snider realleges and incorporates by reference the preceding paragraphs as if stated fully herein.

52. Snider has developed trade secret information including, but not limited to, customer information, proposals, pricing, and prospect lists, that derive independent economic

value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

53. The information, documents, and materials stolen and misappropriated by Defendant constitute trade secrets within the meaning of, and subject to protection under, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1831 *et seq*.

54. Snider regularly transacts business throughout the United States, including in person and by phone, internet, and mail, and the Company's trade secrets relate to this business and are used in interstate commerce.

55. Defendant acquired the Company's trade secrets by improper means, including but not limited to knowingly accessing, downloading, and using this information in violation of his contractual duties owed to the Company.

56. The information contained in these documents is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. The Company has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

57. Snider takes, and at all times here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include restricting availability of confidential information to key employees, requiring key employees (like Defendant) to execute agreements with confidentiality provisions and restrictive covenants, physical security measures to protect against the disclosure of sensitive materials to third parties and IT security efforts.

58. By accessing the Company's computer network without authorization and downloading trade secret information, Defendant has committed both an actual and threatened misappropriation and misuse of the Company's trade secret information in violation of the DTSA.

59. Upon information and belief, and as the Company expects to establish on further investigation and discovery, Defendant has improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) confidential business information and strategies and trade secrets contained in the documents and information he took or disclosed from the Company without authorization and in breach of his contractual duties owed to the Company in order to compete against the Company.

60. Defendant engaged in this conduct despite acquiring this information without authorization.

61. Upon information and belief, Defendant engaged in his misconduct at a time he was no longer employed with the Company.

62. As a direct and proximate result of Defendant's actual and threatened misappropriation of trade secrets, the Company has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendant is enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to the Company.

63. To the extent that Defendant has already provided the Company's trade secrets or other confidential information to third parties, those parties should also be ordered to return and/or destroy that information.

64. As a direct and proximate result of Defendant's misappropriation, the Company has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages,

attorneys' fees, costs and remedies permitted under the DTSA. Each of the acts of misappropriation was done willfully and maliciously by Defendant to unfairly compete against the Company and benefit himself and third parties, thereby entitling Plaintiffs to exemplary damages to be proved at trial.

## COUNT III
### Violation of Computer Fraud and Abuse Act
### (18 U.S.C. § 1030 (et seq.))

65. Snider realleges and incorporates by reference the preceding paragraphs as if stated fully herein.

66. The federal Computer Fraud and Abuse act ("CFAA") provides, "[w]hoever. . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains. . . information from any protected computer. . . shall be punished as provided in subsection (c) of this section." 18 U.S.C.A. § 1030(a)(2)(C). The Act provides that a person who accesses a computer without authorization, nevertheless "exceeds authorized access" if he uses his access "to obtain or alter information in the computer that the accessor is not entitled to so obtain or alter." 18 U.S.C.A. § 1030(c)(6).

67. The Act provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C.A. § 1030(g). A civil claim under the Act may be brought by any person who has suffered or would have suffered damages, loss or injury as described in Sections (a)(5)(B)(i)-(v) of the Act. A "loss" is defined in the Act as "any reasonable cost to any victim, including the cost of responding to an offence, conducting a damage assessment, and restoring the data, program, system or information to its condition prior

to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.A § 1030(e)(11).

68.     Section (a)(4) of the Act likewise prohibits actions whereby a person "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…" 18 U.S.C.A. § 1030(a)(4).

69.     Defendant's wrongful access of the Company's computer network and database without authorization, at a time he was no longer employed by Snider, constitutes a violation of the Computer Fraud and Abuse Act.

70.     As a result of Defendant's violation of the Computer Fraud Act, Plaintiffs has suffered and continue to suffer loss and damage to the integrity of data, computer systems and loss of confidential information and trade secrets, resulting in losses far in excess of $5,000.00 and absent injunctive relief will continue to suffer irreparable harm and damages. *See* **Exhibit B**, Dec. of Lieb, ¶ 31.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the foregoing acts complained of, Plaintiff respectfully requests that this Honorable Court enter one or more orders granting it the following relief:

A.     A temporary restraining order, preliminary injunction, and a permanent injunction requiring Defendant (and any persons acting in concert with him or on his behalf) ordering that:

> 1) Defendant, his agents, servants, employees, representatives, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, "Covered Persons") are ordered, restrained and enjoined as follows:

      i. Directly or indirectly, disclosing or making any use of any Trade Secret and Confidential Information of Snider;

      ii. Provide a full and complete accounting of all electronic devices, email accounts, cloud-storage accounts, and other devices/accounts that Nelson had access to and that any of the information that Nelson improperly downloaded and copied may have been downloaded to or accessed as stated in the Complaint;

      iii. Take all necessary steps to maintain and preserve all potentially relevant evidence regarding the allegations in the Complaint, including, but not limited to, all indicia and potential evidence relating Nelson's misappropriation of Snider's trade secrets and confidential/proprietary information and his and others potential access of that same information by any and all electronic devices, email accounts, including internet e-mail accounts, cloud-storage based accounts, and the like within its possession, custody or control;

      iv. Make available for inspection and imaging all computers, external storage devices, mobile devices, and all personal Cloud and email accounts including internet-based e-mail accounts in Nelson's possession and/or control, to determine the full extent of Defendant Nelson's access, possession, retention, and use of Snider's confidential information or trade secrets.

2) the Covered Persons return to Plaintiff any Trade Secret and Confidential Information that is in their possession, custody, or control (including but not

limited to Trade Secret and Confidential Information in paper form and in electronic form, wherever and however stored, including but not limited to personal computers, cloud storage, external storage media, smart phones and other handheld devices, and email accounts) and to the extent that any such information is maintained in electronic form;

3) until further Order of the Court, the Covered Persons are restrained from conducting, carrying on, or engaging in any competitive business that was developed and/or implemented, in whole or in part, directly or indirectly, through the use of any Company Trade Secret and/or Confidential Information, (the "Prohibited Business"); and

B.   Judgment in favor of Plaintiff and against Defendant;

C.   An award to Plaintiff of actual damages (such as lost profits) and disgorgement of amounts by which Defendant has been unjustly enriched, or in the alternative, a reasonable royalty;

D.   An award to Plaintiff of punitive and/or exemplary damages;

E.   An award to Plaintiff of their reasonable attorneys' fees and its costs incurred in this action;

F.   An award to Plaintiff of pre-judgment and post-judgment interest; and

G.   Such other and further relief as this Court deems just and proper.

Dated this 1st day of June, 2023.

-19-

Respectfully submitted,

/s/ Nicholas S. Hulse
Nicholas S. Hulse (Fed. Id No. 12872)
**FISHER PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone:  (704) 334-4565
Facsimile:  (704) 334-9774
Email:  nhulse@fisherphillips.com
*ATTORNEY FOR PLAINTIFF*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| SNIDER TIRE, INC.<br>D/B/A SNIDER FLEET SOLUTIONS<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN NELSON,<br><br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) CASE NO.:<br>)<br>)<br>)<br>)<br>) |

## VERIFICATION

I, Greg Williamson, Regional Manager of Snider Tire, Inc. d/b/a Snider Fleet Solutions, declare under penalty of perjury that the information contained in the foregoing Verified Complaint is within my personal knowledge and is true and correct to the best of my knowledge, information, and belief.

Executed on May 31, 2023.

*Greg Williamson* (signature)

Greg Williamson

-18-

FP 47221505.1